No. 25,022.

STATE OF KANSAS, *Appellee,* v. HARRY MOSKOWITZ, *Appellant.*

SYLLABUS BY THE COURT.

GRAND LARCENY—*Wire Cable—Circumstantial Evidence Insufficient to Sustain Verdict and Judgment.* The circumstantial evidence adduced by the state to establish the defendant's guilt of grand larceny examined, and held insufficient to sustain the verdict and judgment entered thereon.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed February 9, 1924. Reversed.

*S. B. Amidon, S. A. Buckland, H. W. Hart, Glenn Porter,* all of Wichita, and *Charles W. Steiger,* of El Dorado, for the appellant.

*Charles B. Griffith,* attorney-general, *R. T. McCluggagE,* and *Stanley C. Taylor,* both of El Dorado, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant was convicted of the felonious stealing of a wire cable used in oil drilling operations, and the main question here is whether there was any substantial testimony to sustain the verdict and judgment of conviction.

The defendant, Harry Moskowitz, and one F. A. Newberger were engaged as partners dealing in new and second hand supplies for drilling oil wells. Moskowitz could not read or write and Newberger was the leader in their business affairs. They sold to one Morgan a 3,500-foot cable which he needed at a well drilling operation near Colwich in Sedgwick county. Before it was delivered, Morgan concluded that he would require a longer cable and he told Newberger that he could not use a 3,500-foot line. Newberger said he could make the exchange, and a day or two later he called Morgan by telephone and said he had a 4,000-foot line. Shortly thereafter a 4,070-foot cable belonging to one C. E. Ash was stolen from a farm in Butler county, and was found at the Morgan well near Colwich.

Newberger and Moskowitz were promptly arrested for grand larceny, and were granted separate trials. Newberger was con-victed and served a term in the penitentiary therefor.

The state does not contend that Moskowitz personally partici-pated in the theft. He and the complaining witness, Ash, attended a dance at El Dorado on the night of the theft, March 9, 1921. The cable was stolen between 8:30 and 9 o'clock p. m., and was delivered at 2:30 a. m., five or six hours later at Colwich, some thirty miles away, by two men in a truck.

The state's theory of defendant's participation in the theft is founded on the following circumstances: When Newberger and Moskowitz were arrested, Newberger said to Ash, the complaining witness: "Why didn't you tell me it was your line? I would have spent all kinds of money getting it back for you. When you found out where it was, why didn't you tell me?" During this conversa-tion, Moskowitz was present and he had just been arrested for the theft. Moskowitz said nothing.

The day after the arrest of Newberger and Moskowitz, the latter made inquiry as to the whereabouts of a truck driver, Hickman, and left word at Hickman's house for him to call at the Newberger and Moskowitz place of business. Hickman appeared and Newberger told Hickman in the presence of Moskowitz to take his truck and go to a farm near Peabody and get a wire line he and Moskowitz had sold to Morgan and take it to Morgan at Colwich. Newberger said they were late on delivery and to give Morgan some excuse. Said Newberger, "Tell them something about the truck being broken down, or anything, it didn't make any difference, so it would put them in the clear, so they wouldn't lose the sale of the wire line." In accordance with these directions Hickman hauled and delivered the 3,500-foot line. Apparently this was the one which had first been the subject of the sale to Morgan before he concluded to use a longer line. When Newberger was giving these instructions to the truck driver, including the suggested excuse for delay in delivery, Moskowitz said nothing.

Some testimony touching conversations between Newberger and various persons, of little apparent significance, had occasionally been temporarily admitted and then excluded except where they were had in the presence of Moskowitz. At the conclusion of the evidence, on motion of defendant that the testimony as to all these conversations be stricken out, the court ruled:

"The Court: These motion will be overruled except in so far as they have heretofore been sustained upon motions made by the attorneys for the defendant at the time. In other words, any conversation had between Morgan and Newberger, where Moskowitz was not present have been, I think, excluded. If not, they are now excluded, but not conversations had when Moskowitz was present."

The jury returned a verdict of guilty. Judgment was entered accordingly.

The foregoing constitutes the evidence upon which the state depends to justify the verdict and judgment. The defendant contends that it was altogether insufficient for such purpose and that the defendant was entitled to an instructed verdict and to a summary discharge. The trial court gave an excellent instruction touching the significance of circumstantial evidence and its essentials of inclusion and exclusion before a verdict of guilty could be returned against the defendant. And of course that instruction was the law of this case. It reads:

"11. You are instructed that where the state relies upon circumstantial evidence for a conviction, the circumstantial evidence relied upon to establish the guilt of the defendant must be of such a character as to exclude every reasonable supposition or hypothesis other than the defendant's guilt, and you are instructed as a matter of law, that where a conviction for a criminal offense is sought upon circumstantial evidence alone, the state must not only prove by the evidence that the alleged facts and circumstances are true, but they must be such facts and circumstances as are absolutely incompatible upon any reasonable hypothesis with the innocence of the accused, and incapable of explanation upon any reasonable supposition or hypothesis other than the guilt of the accused."

Tested by the law as laid down in this instruction, can it be said that the evidence met these requirements? There is a well known field of evidence in criminal law covering the inferences which may be drawn from the failure of a person accused of crime to resent, explain, or deny any prejudicial statements made in his presence tending to implicate him in the commission of a crime. (*The State v. Cruse,* 112 Kan. 486, 494, and syl. ¶ 6, 212 Pac. 81.) But can it be fairly said that Newberger's conversation with Ash called for any challenge, explanation, or denial by Moskowitz? We think not. Nothing to his prejudice could justly be implied from anything said in that conversation. So, too, in the incident of the employment of Hickman, the truck driver, to deliver the 3,500-foot cable which had been the subject of a *bona fide* sale to Morgan. The

instructions given by Newberger to the truck driver as to making excuses for delay were avowedly to put the partners in the clear so they wouldn't lose the sale. That advice to the truck driver necessarily bound Moskowitz as partner in the business transaction, and since he kept silent he would be bound by it and by the legitimate inferences which might be drawn therefrom. But the only obvious inference was that both partners had a low standard of business ethics; and that is of no consequence here. Newberger said nothing to the truck driver which tended to accuse or implicate Moskowitz in the theft of another cable—the 4,070-foot line—which, if Moskowitz was innocent, would have naturally called forth from him some show of resentment, disapproval, or denial, nor did his silence give rise to any just inference as to his consciousness of guilt.

Counsel for the state cite commonplace authorities to the effect that the weight of evidence is for the jury, etc. Very true, but the evidence has to have at least some perceptible weight before the cause should be submitted to the jury. (16 C. J. 932.) We find none in this record to fill that requisite. Cases are also cited which hold that the statements and declarations of a coconspirator are competent even if made in the absence of the accused. True again. If there were any such statements in this case, they were excluded by the ruling of the trial court as quoted above. But beyond that point, before any such statements or declarations would be admissible, there would have to be; at some stage of the trial, (16 C. J. 648, 864) some evidence of such a conspiracy. Here there was none. The trial court's instruction on circumstantial evidence, if fairly and intelligently applied to this case, was the virtual equivalent of a directed verdict for defendant.

The judgment is reversed with instructions to discharge the defendant.